United States District Court
Middle District of Florida
Jacksonville Division

**REBECCA HANNESSON,**

     **Plaintiff,**

**v.**                                                                 **NO. 3:23-cv-1397-WWB-LLL**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security,**[1]

     **Defendant.**

_____

### Report and Recommendation

Rebecca Hannesson seeks judicial review of a decision by the Commissioner of Social Security denying her claim for disability insurance benefits (DIB) under the Social Security Act. *See* 42 U.S.C. § 405(g); 1383(c)(3). For the reasons stated below, I respectfully recommend the Commissioner's decision be reversed and the case be remanded.

### Background

Hannesson was born on October 26, 1975, and has an associate degree in general studies. Tr. 48, 214. Hannesson filed an application for DIB with an onset date of August 1, 2020. Tr. 184. Hannesson alleges disability due to post-traumatic

---

[1] Carolyn W. Colvin became the Commissioner of Social Security on November 30, 2024. Thus, under Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin should be substituted for Martin O'Malley as the defendant in this action. No further action need be taken pursuant to the last sentence of 42 U.S.C. § 405(g).

stress disorder (PTSD), sleep hypoxia, temporomandibular joint (TMJ), lower back injury with degeneration, cervical spine injury with cervicalgla, fibromyalgia, bilaterial knee injuries, bilateral shoulder injuries with AC joint degeneration, migraine headaches (migraines), and overactive bladder with frequency and incontinence. Tr. 217. The Social Security Administration (SSA) denied her application both initially and upon reconsideration. Tr. 97-98, 108-09. Hannesson requested a hearing, which was held on April 27, 2023, before Administrative Law Judge (ALJ) Scott Morris. Tr. 41-71. Hannesson was represented by counsel and testified on her own behalf. *Id.* A vocational expert (VE) also testified. *Id.*

On July 18, 2023, the ALJ issued an unfavorable decision finding that Hannesson: (1) had not engaged in substantial gainful activity since her alleged onset date of August 1, 2020; (2) has the following severe impairments: lumbar degenerative disc disease; lumbar stenosis; degenerative joint disease; migraines; fibromyalgia; anxiety; depression; PTSD; and substance abuse disorder; (3) did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) had the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(c);[2] (5) and that Hannesson is unable to perform any

_____

[2] The ALJ determined that Hannesson could perform medium work but with the following limitations: that she can frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crawl; occasionally crouch; occasionally work around humidity, vibration, dust, odors, fumes, pulmonary irritants, unprotected heights, and moving mechanical parts; tolerate up to a moderate noise level (e.g., a typical office setting); adapt to frequent, but not constant changes in a routine work

past relevant work, but that there are jobs which exist in significant numbers in the national economy that she could perform, including: hospital cleaner, buffet attendant, sorter of agricultural products, small products assembler II, and food service worker. Tr. 22-33. The ALJ concluded Hannesson was not disabled. Tr. 34. Hannesson requested appellate review, which was denied. Tr. 1-3. The ALJ's decision is the final decision of the Commissioner.

**Authority**

The Social Security Act provides various types of benefits to those who cannot find work because of a disability. *See* 42 U.S.C. § 423(a). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A "physical or mental impairment" results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Regulations (SSR) set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1101–02 (11th Cir. 2021) (citations omitted). The ALJ must determine whether the claimant: (1) is

---

setting; maintain attention and concentration for two-hour increments; and occasionally interact with the general public. Tr. 25.

3

engaged in substantial gainful activity; (2) has any severe medically determinable physical or mental impairments; (3) has a severe impairment which meets or equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) has an RFC which allows for the claimant to perform past relevant work; and (5) can make an adjustment to perform other work given the claimant's RFC, age, education, and work experience. *Id.*

Although the claimant has the burden of proof in steps one through four, the burden shifts to the Commissioner in step five to show "the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (alteration in original) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). In her determination, the Commissioner may take "administrative notice of reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles (DOT).[3] 20 C.F.R. § 404.1566(d). The Commissioner may also consider the testimony of a VE in making this determination. *Id.* § 404.1566(e). To elicit testimony, the ALJ will pose hypothetical questions to the VE to determine whether a person with the claimant's limitations can secure employment in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). If the Commissioner makes this showing, the burden shifts

---

[3] The Eleventh Circuit has defined the DOT as an "extensive compendium of data about the various jobs that exist in the United States economy, including] information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).

back to the claimant to prove he or she is unable to perform the jobs suggested. *Goode*, 966 F.3d at 1279.

A Court's review of a decision by the Commissioner is limited to determining whether correct legal standards were applied and whether substantial evidence supports her findings. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (citation omitted).

In its review, the court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the ALJ. *Goode*, 966 F.3d at 1280 (citation omitted). Within this role, however, federal courts do not "act as automatons." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Court retains an important function to "scrutinize the record as a whole" and determine whether the ALJ's decision was reasonable. *Id.* While the court reviews the Commissioner's decision with deference to his factual findings, legal conclusions are reviewed de novo. *Keeton v. Dep't of Health and Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "[e]ven if the evidence preponderates against the Commissioner's findings . . . ." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–

5

59 (11th Cir. 2004) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## Argument

Hannesson raises three issues on appeal: 1) the ALJ failed to properly evaluate her migraines under SSR 19-4p; 2) the ALJ failed to properly evaluate her fibromyalgia under SSR 12-2p; and 3) the ALJ's RFC is deficient.[4] Doc. 23 at 3, 9, 21-35. The Commissioner counters in a variety of ways, including that the ALJ properly considered Hannesson's migraines and fibromyalgia; the ALJ was not required to "mechanically recite the evidence leading to h[is] determination" and may implicitly find that a claimant does not meet a listing; and the RFC is supported by substantial evidence. Doc. 28 at 6-20.

### I. It is unclear whether the ALJ considered that Hannesson's migraines medically equaled Listing 11.02.

Hannesson first argues that the ALJ erred at step three of the sequential process in violation of SSR 19-4p by failing to properly evaluate whether her migraines met or are medically equivalent to Listing 11.02B or D. Doc. 23 at 3-9. Hannesson effectively argues that the ALJ's determination that she is not disabled at step three is not supported by substantial evidence. *See id.*; doc. 29 at 1-3.

_____

[4] Under this section of plaintiff's brief, she specifically argues the RFC is deficient because: 1) it does not account for limitations related to her light sensitivity; 2) it is inconsistent with the opinions of the State agency psychological consultants; 3) it fails to reference her ability to interact with supervisors; and 4) the ALJ engaged in "sit and squirm" jurisprudence in determining her capacity to perform work-related activities. Doc. 23 at 9-35.

Hannesson's main contention is that the ALJ's decision "only superficially refers to [her] migraines . . ." and fails to provide any rationale or evidence supporting his determination. Doc. 29 at 2. In response, the Commissioner argues that the ALJ did not err because he was not required to specifically address Listing 11.02 or SSR 19-4p in his step three evaluation. Doc. 28 at 6. Further, the Commissioner contends Hannesson's argument is without merit because she fails to demonstrate that she meets the Listing requirements of 11.02B or D. *Id.* at 7-8.

Because the ALJ found Hannesson to have severe migraines at step two of the sequential process, the ALJ next moves to step three, where he determines whether the claimant's impairments—either individually or when considered together—equal the severity of any Listing. *See* 20 C.F.R. § 404.1526. The claimant has the burden— at step three—to demonstrate she has a Listing-level impairment. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A diagnosis of a listed impairment alone is not sufficient. *See Wilson*, 284 F.3d at 1224. "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Id.* "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." *Id.*

There is no Listing that applies directly to migraine headaches, but the Commissioner "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." SSR 19-4p, 2019 WL 4169635, *7. Although an explicit Listing does not exist for migraine headaches, the

Regulations suggest that Listing 11.02—for epilepsy—is the most analogous. *See id.* SSR 19-4p explains, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in [L]isting 11.02 (paragraph B or D for dyscognitive seizures) . . . ." *Id.*

For the Court to find that the ALJ properly considered—and rejected—that Hannesson's migraines met Listing 11.02B, "the Court must find that the ALJ considered (1) a medical source's description of Plaintiff's migraines, including their duration, intensity, and accompanying symptoms, (2) the frequency which with Plaintiff's migraines occurred, (3) whether Plaintiff adhered to a prescribed treatment, (4) whether Plaintiff suffered from any side effects of treatment, and (5) whether the migraines interfered with Plaintiff's activity during the day." *Rice v. Comm'r of Soc. Sec.,* No. 8:23-CV-02639-CEH-NHA, 2024 WL 4993583, at *5 (M.D. Fla. Nov. 20, 2024), *report and recommendation adopted*, No. 8:23-CV-2639-CEH-NHA, 2024 WL 4989415 (M.D. Fla. Dec. 5, 2024) (citing SSR 19-4p).[5]

Alternatively, in evaluating whether her migraines are medically equivalent to Listing 11.02D, "an ALJ must consider (1) the frequency which with a plaintiff's migraines occurred, (2) whether a plaintiff adhered to his prescribed treatment, and (3) whether the migraines caused the plaintiff to have a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with

---

[5] The Court acknowledges and considers that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (citation omitted).

others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id*. at 6.

The Commissioner is correct that the ALJ is not required to mechanically recite all the evidence leading to his determination. However, an "ALJ's implicit conclusion regarding whether a claimant's condition meets a Listing must still be supported by substantial evidence." *Nelson v. Comm'r of Soc. Sec.*, No. 2:19-CV-788-NPM, 2021 WL 1207753, at *5 (M.D. Fla. Mar. 31, 2021). Thus, although the ALJ implicitly found Hannesson's migraines are not medically equivalent to Listing 11.02B or D, tr. 22, his determination must be supported by substantial evidence. Given the above, judicial review is frustrated because the threadbare discussion of Hannesson's migraines at step three provides no indication that the ALJ sufficiently evaluated—and rejected—Hannesson's migraines under SSR 19-4p. In fact, the analysis omits any discussion of the medical evidence submitted by Hannesson regarding her migraines or headache symptomology as required by the Regulations.[6] Tr. 22-25.

Although the Commissioner essentially concedes that the ALJ does not discuss Hannesson's migraines at step three, she argues that the ALJ sufficiently discusses Hannesson's migraines later in his opinion, thus his step three findings are supported by substantial evidence. Doc. 28 at 8 ("[T]he decision shows that [the

---

[6] For example, the ALJ fails to discuss Hannesson's testimony that she experiences migraines "anywhere from . . . two to four times a week" or that in June 2022 that she reported having "headaches about three days per week . . . ." Tr. 57; 1520.

ALJ] discussed migraines at length . . . .") Upon an independent review of the record, however, I find the Commissioner's argument without merit. *See* tr. 26-29, 31, 32.

In his opinion, the ALJ minimally references "migraines" or "headaches." The ALJ initially notes:

> The claimant testified she has migraine headaches from a pituitary tumor and was advised by her doctor to visit the emergency room for migraine pain, but she does not usually go. She said they occur two to four times per week, and last for four hours, if she takes her medication on time. She added that her medication causes diarrhea.

Tr. 26.

The Court acknowledges that the ALJ addresses some aspects of SSR 19-4p here; however, this minimal discussion of Hannesson's migraines is insufficient to support his step three analysis for several reasons. First, despite referencing Hannesson's testimony, the ALJ provides no citation to the record. *Id.* And a review of her testimony reveals the statement above is unsupported. Hannesson never testified that she "usually does not go" to the emergency room. Rather during her testimony, she indicated that her doctors instructed her that "if a headache is really, really bad . . . if your headaches are excruciatingly painful, to go to the emergency room because that could be an emergency. So, I have gone for my migraines before." Tr. 57. Beyond this initial statement—and contrary to the Commissioner's argument—the ALJ's discussion of Hannesson's migraines is scarce, failing to support his decision at step three.

The ALJ next notes that Amarilis Aviles-Garcia, M.D., found that Hannesson had not refilled her migraine medication for several months. Doc. 28 at 8. (citing tr. 29, 1637).[7] But Hannesson's failure to follow her prescribed treatment—in and of itself—is not the only relevant evidence to her disability determination. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored."). Despite Eleventh Circuit precedent, the ALJ here failed to discuss, much less find, that Hannesson taking her medication properly would restore her ability to work.

Finally, the ALJ notes that in October 2021, Hannesson reported her migraines were better with medication, tr. 28, and the Commissioner cites a December 2022 report—not discussed in the ALJ's decision—in which Hannesson also indicated her migraines were better with medication. doc. 28 at 8 (citing tr 2027). But again, this addresses only one criterion under SSR 19-4p—her adherence to prescribed treatment. While relevant, the decision is still deficient. The ALJ's failure to discuss the remainder of the criteria under SSR 19-4p, creates ambiguity whether he properly considered Hannesson's migraines under Listing 11.02B or D.[8]

---

[7] While not discussed in the ALJ's decision, the Commissioner cites Dr. Aviles-Garcia's suspicion that Hannesson "was not using the [migraine] medication correctly . . ." and noted Hannesson's request for over-the-counter medication because she "does not like taking meds . . . ." Doc. 28 at 8 (citing tr. 736.).

[8] As explained above, *see supra*, to meet a Listing under 11.02B, the ALJ considers (1) a medical source's description of Plaintiff's migraines, including their duration, intensity,

Thus, despite the Commissioner's arguments, the minimal discussion of Hannesson's migraines throughout the remainder of the ALJ's decision, does not cure the error at step three.

For the reasons stated above, I find remand is warranted. Given this, I need not address plaintiff's second and third arguments, although I recommend that the ALJ be directed to review the entire record on remand. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (finding that, where a case is remanded for other reasons, it may be unnecessary to review other issues raised); *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (finding the ALJ must review the entire record on remand).

## Recommendation

Because the Commissioner's decision is not supported by substantial evidence, I respectfully recommend:

1.  The Commissioner's decision be **reversed and remanded** with the following instructions:

---

and accompanying symptoms, (2) the frequency which with Plaintiff's migraines occurred, (3) whether Plaintiff adhered to a prescribed treatment, (4) whether Plaintiff suffered from any side effects of treatment, and (5) whether the migraines interfered with Plaintiff's activity during the day.

In evaluating whether her migraines are medically equivalent to Listing 11.02D, an ALJ must consider (1) the frequency which with a plaintiff's migraines occurred, (2) whether a plaintiff adhered to his prescribed treatment, and (3) whether the migraines caused the plaintiff to have a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

> (A)    re-evaluate the evidence regarding Hannesson's migraine
>         headaches at step three of the sequential process and determine
>         whether her migraine headaches meet or are medically equal to
>         the severity of Listing 11.02B or D; and
>
> (B)    take other such action as may be necessary to resolve this matter
>         properly.

2.    The Clerk of Court be **directed** to enter judgment in favor of Rebecca
      Hannesson and against the Acting Commissioner of Social Security and
      **close** the case.

**Entered** in Jacksonville, Florida, on Jacksonville 27, 2025.


LAURA LOTHMAN LAMBERT
United States Magistrate Judge


## Notice to the Parties

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (doc. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

c:
The Honorable Wendy W. Berger, United States District Judge
Adriana M. de la Torre, Esquire

Katherine Olivia Palacios-Moreno, Esquire
Kristine Dittmeier Vitemb, AUSA
Sean Stewart, Esquire
John F. Rudy, III, Esquire